**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **NELSON GOMEZ,**<br>*Petitioner,*<br><br>v.<br><br>**J.L. JAMISON,** Warden, Federal Detention Center, Philadelphia; **JOHN E. RIFE,** Acting Field Office Director, Immigration and Customs Enforcement, Enforcement and Removal Operations, Philadelphia Field Office; **MARKWAYNE MULLIN,** Secretary of the Department of Homeland Security; **TODD BLANCHE,** Acting U.S. Attorney General; **U.S. DEPARTMENT OF HOMELAND SECURITY; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW,**<br>*Respondents.* | **Civil No. 26-5604** |

## MEMORANDUM

**Costello, J.** **September 10, 2026**

Petitioner Nelson Gomez is a noncitizen who entered the United States in approximately 2011. On August 5, 2026, Immigration and Customs Enforcement ("ICE") detained Gomez under 8 U.S.C. § 1225(b)(2), a provision of the Immigration and Nationality Act ("INA") which generally does not permit release on bond. While detained at the Federal Detention Center in Philadelphia, Pennsylvania ("FDC"), Gomez filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, arguing that his mandatory detention without bond is unlawful. The Government opposed the Petition. Because § 1225 does not apply to noncitizens, like Gomez, who have resided in the United States since entering the country, the Court will grant the Petition in part and order a bond hearing.

## I. FACTUAL BACKGROUND[1]

Gomez is a citizen of Honduras who entered the United States in approximately 2011. ECF No. 3-1 at 1; ECF No. 1 ¶¶ 1, 18. On August 5, 2026, ICE detained Gomez while he was on his way to work. ECF No. 1 ¶¶ 2, 21. At the time he filed his petition, Gomez was detained at the FDC. *Id.* ¶¶ 2, 22.

## II. LEGAL STANDARD

A writ of habeas corpus is available "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST. art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court may grant a writ of habeas corpus if a petitioner is detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). This includes a noncitizen's challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 523 (2003) ("[T]he Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." (citation and quotations omitted)).

## III. LEGAL BACKGROUND

### A. INA Detention Provisions

At issue in this matter are two provisions of the INA that permit detention of noncitizens during immigration removal proceedings. Section 1226 of the INA provides that the Attorney General may arrest and detain noncitizens subject to a few statutory exceptions. 8 U.S.C.

---

[1] The Government does not dispute the facts in this case. The Court will therefore decide this matter on the pleadings and without a hearing.

§ 1226(a). A noncitizen may request a bond hearing before an immigration judge, who may release the noncitizen upon finding that he "poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019); 8 C.F.R. § 1236.1(c)(8). For decades, noncitizens like Gomez who entered the United States and resided in the country prior to their removal proceedings were detained under this section of the INA.

Prior to Gomez's arrest, the Department of Homeland Security ("DHS") changed course and began detaining noncitizens under § 1225 of the INA, which applies to "applicant[s] for admission" to the United States. 8 U.S.C. § 1225(b)(2)(A). Historically, this provision applied only to individuals actively seeking to enter the country at a border or port of entry—not individuals already residing in the United States. *Kashranov v. Jamison*, 25cv5555, 2025 WL 3188399, at *6-7 (E.D. Pa. Nov. 14, 2025). In July 2025, DHS issued a policy directing ICE agents to consider anyone who entered the United States without admission or inspection as an "applicant for admission" regardless of how long they have already been present in the country. *Salinas Jaigua v. Jamison*, 25cv7115, 2025 WL 3757076, at *2 (E.D. Pa. Dec. 29, 2025).

Individuals detained under this provision are subject to mandatory detention pending the disposition of their removal proceedings. 8 U.S.C. § 1225(b)(2)(A). They are generally not afforded an opportunity for a bond hearing and "may be released only 'for urgent humanitarian reasons or significant public benefit.'" *Kashranov*, 2025 WL 3188399, at *1 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018)).

The Board of Immigration Appeals ("BIA") subsequently issued a decision endorsing DHS's new interpretation of § 1225 and ruling that all noncitizens who entered the United States without admission or inspection, including those who have been residing in the United States

without lawful status, are subject to mandatory detention without bond. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

### B. Gomez's Petition

On August 5, 2026, ICE detained Gomez under § 1225 pursuant to the application of this new policy. ECF No. 1 ¶¶ 2, 21, 23. Gomez argues that § 1225 does not apply to him because he is not actively "seeking admission" to the United States. *Id.* ¶¶ 45-47. Rather, he entered without inspection and has been living in the United States. *Id.* ¶¶ 1, 45. He therefore contends that his detention is governed by § 1226, which confers the right to a bond hearing. *Id.* ¶¶ 24-31. He also argues that his mandatory detention without the right to a bond hearing violates his constitutional due process rights.[2] *Id.* ¶¶ 55-57, 59-63. Gomez asks the Court to declare his detention under § 1225 unlawful and order his immediate release. *Id.* ¶¶ 36-43.

## IV. DISCUSSION

### A. Section 1225 Does Not Apply to Gomez

The disposition of this case depends on whether § 1225 or § 1226 applies to noncitizens like Gomez, who have resided in the United States since entering the country. The Court of Appeals for the Third Circuit recently answered this question in a precedential decision. *See Buele Morocho v. Warden Philadelphia FDC*, --- F.4th ---, Nos. 26-1150 & 26-1454, 2026 WL 2546223, at *3 (3d Cir. Aug. 28, 2026). In *Buele Morocho*, the Third Circuit held that § 1225 applies to noncitizens arriving at the border and does not apply to noncitizens already in the United States. *Id.* at *5, *7.[3]

---

[2] Gomez's Petition also asserts that this continued detention violates the Administrative Procedure Act ("APA"). *Id.* ¶¶ 49-53. Because the Court concludes that Gomez is entitled to relief under the INA and Due Process Clause, it declines to reach this argument.

[3] Most courts of appeals have reached a similar conclusion. *See Guerro Orellana v. Moniz*, --- F.4th ---, Nos. 25-2152 & 26-1094, 2026 WL 2546223, at *1 (1st Cir. Aug. 13, 2026); *Barbosa*

The Third Circuit's holding was based on the relevant statutory language. *Id.* at *2. Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." It states that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" pending removal hearings. 8 U.S.C. § 1225(b)(2)(A). By its terms, this section applies to a noncitizen who is both "an applicant for admission" and "seeking admission."

An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)[.]" 8 U.S.C. § 1225(a)(1). The statute also defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

The INA does not define the phrase "an alien seeking admission." Referring to its "ordinary meaning," the Third Circuit reasoned that the term "seeking admission" requires that an "'applicant for admission' must engage in present or ongoing action to gain 'admission,' that is, 'lawful entry . . . into the United States after inspection and authorization by an immigration officer.'" *Buele Morocho*, 2026 WL 2546223, at *3. For § 1225(b)(2)(A) to apply, "the noncitizen must do more than be an 'applicant for admission.'" *Id.* Thus, because the petitioners

---

*da Cunha v. Freden*, 175 F.4th 61, 84-88 (2d Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 722-35 (6th Cir. 2026); *Cirrus Rojas v. Olson*, 183 F.4th 909, 915 (7th Cir. 2026); *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1164 (9th Cir. 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1237-38 (10th Cir. 2026); *Hernandez Alvarez v. Warden, Federal Detention Ctr. Miami*, 175 F.4th 1258, 1262 (11th Cir. 2026). To date, only divided panels of the Fifth and Eighth Circuits have found the Government's interpretation of § 1225 to be correct. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026); *Avila v. Bondi, et al.*, 170 F.4th 1128, 1133-35 (8th Cir. 2026).

in *Buele Morocho* entered the United States without inspection years before they were arrested by ICE and were not engaged in ongoing acts to gain admission to the United States, the Court held that § 1225 did not apply to them. *Id.* at *4. Similarly, here, Gomez entered the United States years ago and was not actively seeking admission at the time of his arrest. Therefore, § 1225 does not apply to him.

Instead, his detention is governed by § 1226 because he is a "[noncitizen] already present in the United States." *Jennings*, 583 U.S. at 303. Section 1226 provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States[.]" 8 U.S.C. § 1226(a). Except under very limited circumstances, noncitizens detained under this section are entitled to a bond hearing and an opportunity for release pending the outcome of immigration proceedings. *See* 8 C.F.R. §§ 1003.19(a), 1236.1(d). Because § 1226 applies, Gomez's mandatory detention under § 1225 is unlawful.

**B. Due Process**

In *Buele Morocho*, the Third Circuit also concluded that mandatory detention of noncitizens who have lived in the United States could violate the Due Process Clause. *Buele Morocho*, 2026 WL 2546223, at *8. To determine whether a government action violates due process, courts apply the balancing test set forth in *Mathews v. Eldridge*, which weighs (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Each *Mathews* factor weighs in favor of Gomez. First, he has a strong liberty interest in being free from mandatory detention. Indeed, freedom "from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690. Second, Gomez's detention under § 1225 poses a high risk of erroneously depriving him of his rights because he has not been afforded the opportunity for a neutral decisionmaker to make an individualized determination about whether he poses a flight risk or a danger to the community. *Buele Morocho*, 2026 WL 2546223, at *9. Third, a bond hearing poses a minimal administrative burden to the Government. That minimal burden is clearly outweighed by Gomez's strong liberty interest and right to be heard. *Id.* at *10.

## V. CONCLUSION

Section 1226 applies to Gomez's detention because he is not actively seeking admission and has been living in the United States for an extended time. Therefore, his detention under § 1225 is unlawful and his continued detention without a bond hearing violates due process. Accordingly, the Court will grant his Petition in part and order a bond hearing.[4]

An appropriate Order follows.

**BY THE COURT:**

MARY KAY COSTELLO
United States District Judge

[4] In approximately December 2018, Gomez entered a guilty plea to several traffic-related offenses. Because of his criminal history, the Court will not order his immediate release as he requests.